UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
-------------------------------------------------------X

In re Fiber Optek Interconnect Corp.,          Case No. 05-30045

        Debtor.

-------------------------------------------------------X

**MEMORANDUM DECISION ON (1) MOTION TO REARGUE,
AND (2) MOTION FOR CONTEMPT**

APPEARANCES:

Michael Pascazi
1065 Main Street, Suite D
Fishkill, New York 12524
*Pro se* creditor

Seth Kupferberg
Assistant Attorney General
120 Broadway
New York, New York 10271

Nicholas Pascale
Tarshis Catania Liberth Mahon Milligram
One Corwin Court
Newburgh, New York 12550
Counsel for Frank Zarzeka

HON. CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE

      Michael Pascazi ("Pascazi"), petitioning creditor and former president of the Debtor, moved to reargue a portion of an Order of this Court, dated March 6, 2009, which denied his motion to compel abandonment of the estate's claim against

Debtor's vice-president in a state-court derivatives action. Pascazi also moved the Court for an Order holding the New York State Department of Labor ("Department") in contempt for its continuing proceedings to enforce certain provisions of the New York Labor Law against the Debtor in a separate proceeding in state court. The Court denied both motions on the record of a hearing held on September 8, 2009. This memorandum decision describes the factual and legal reasoning for the Court's denial of Pascazi's motions, and shall be incorporated into the separate Orders denying Pascazi's motions. The Court addresses both motions in this single memorandum decision.

### *STATEMENT OF JURISDICTION*

This Court has subject matter jurisdiction over these contested matters pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. A matter concerning a settlement is a core proceeding pursuant to 28 U.S.C. § 157(b). A matter concerning the automatic stay is a core proceeding pursuant to 28 U.S.C. § 157(b).

### *BACKGROUND*

Debtor's bankruptcy case was commenced as a result of Pascazi, Kathleen Pascazi, who is unrebutted in the Department's papers as being Pascazi's wife, and Ennio Pascazi, who is unrebutted in the Department's papers as being Pascazi's father, filing an involuntary petition for relief under chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, against the Debtor on February 16, 2005. On the petition, Pascazi alleged a claim of $338,881.25, or about 90% of the combined value of the claims of the petitioning creditors; Kathleen Pascazi alleged a claim of $27,557.99; and Ennio Pascazi alleged a claim of $10,779.99. The order for relief

*NOT FOR PUBLICATION*

was entered and Michael O'Leary ("O'Leary" or the "Trustee") added as the trustee approximately one month later.

Upon motion of the Trustee, Pascazi was designated the debtor by Order dated May 3, 2005; this appears to have been done for convenience of the administration of this case because a natural person is required to prepare schedules and testify at the meeting of creditors. Pascazi prepared the schedules pursuant to this duty, and listed total assets of about $4.1 million and total liabilities of about $525,000. The bulk of Debtor's assets at the time of filing appear to have been soft assets, *i.e.* lawsuits in which Pascazi or the Debtor was the plaintiff.

Frank Zarzeka, vice-president, treasurer, and secretary of Debtor and holder of 50 percent of Debtor's common stock, has had many appearances in this case, including as a defendant in an adversary proceeding discussed herein. Pascazi was the holder of the other 50 percent of Debtor's common stock.

At the time the Debtor's bankruptcy case was commenced, a "state law shareholder derivative legal action" was pending in the Dutchess County Supreme Courty, in which Pascazi was a plaintiff and Zarzeka was a defendant. Debtor also appears to have been a plaintiff in this lawsuit.

At the time Debtor's bankruptcy case was commenced, the Department was reviewing records to determine whether Debtor had violated Labor Law § 220, having received claims to this effect. The Department commenced a proceeding to determine whether such violation had occurred by notice of hearing dated March 30, 2006.

### *The estate's abandonment of its claims against Zarzeka*

On March 12, 2007, O'Leary commenced an adversary proceeding against Pascazi and Zarzeka, seeking to recover a fraudulent transfer of property in the

3

amount of $1.25 million ("Adv. P. No. 07-09015" or the "Adversary Proceeding"). The Trustee settled with Zarzeka by stipulation so-ordered by the Court on November 10, 2008: Zarzeka would pay $175,000 in two installments, and the Trustee's claims against him would be released (the "Stipulation"). The Stipulation provides in relevant part:

> \*\*\*3. In the event that Mr. Zarzeka shall well and truly pay the above sums as provided for herein, then Mr. Zarzeka's and Bonnie Zarzeka's obligations under this Stipulation of Settlement shall be fully discharged and the Trustee shall thereafter furnish to Mr. Zarzeka and Bonnie Zarzeka a General Release from liability and Stipulation of Discontinuance with prejudice as to the claims commenced in this adversary proceeding and as to all of the claims which have been set forth ***or which could have been set forth in this adversary proceeding*** …
>
> \*\*\*5. All claims however denominated regardless of the allegations, the facts, law, theories, or principles upon which they are based, including but not limited to, claims for contribution or indemnity against this settling defendant, FRANK P. ZARZEKA, by any individual, corporation, partnership, unincorporated association, or any other type of entity including, but not limited to, any party to this litigation in which claims now exist or have accrued or in the future may exist or accrue, ***and*** which arise out of or are in any way related to the Trustee's action or the subject matter of the Trustee's action, or arise out of or are in any way related to the Trustee's action against Mr. Zarzeka, for adversary proceeding no. 07-9015-cgm are hereby extinguished, discharged, satisfied and are otherwise unenforceable.\*\*\*

(emphasis added). The Court so-ordered the Stipulation, over the objection of Pascazi. Afterward, on December 8, 2008, Pascazi moved in the lead case for an order compelling O'Leary to abandon the claims of plaintiffs in *Pascazi et al. v. Zarzeka et al.*

In the Adversary Proceeding, by Order dated March 6, 2009, the Court ordered:

4

> *** 7. The Motion to Abandon is denied to the extent that it seeks to continue an action of the estate against Frank P. Zarzeka.
> 8. The Motion to Abandon is granted only to the extent, if any, that the actions described in the Motion to Abandon may be pursued against parties other than Frank P. Zarzeka.***

In the accompanying memorandum decision dated March 4, 2009, the Court noted,

> On December 8, 2008, after the Court approved the Zarzeka Settlement, Mr. Pascazi filed a motion to compel the Trustee to abandon the estate's "shareholder derivative action" against Mr. Zarzeka for alleged breach of fiduciary duty to the Debtor, "usurped corporate opportunity" and "civil conversion." Mr. Pascazi's motion to abandon is denied to the extent he seeks to continue the action against Mr. Zarzeka, because the estate *does* have the right to waive the estate's claims against Mr. Zarzeka and did so in the Zarzeka Settlement.

Thus, the Court expressly held that the estate's claim against Zarzeka in the derivatives action had been resolved by the Settlement. The Court granted the motion to compel abandonment "to the extent that these claims [against the other defendants] may be pursued without proceeding against Zarzeka – ***an issue upon which this Court has not been asked to take a position***" (emphasis added).

Also in the memorandum decision dated March 4, 2009, the Court denied Pascazi's motion to reargue the Zarzeka settlement as moot.

On March 16, 2009, Pascazi moved to reargue that portion of the Order dated March 6, 2009, that denied his motion to compel abandonment.

### ***The motion to reargue***

The present motion is really Pascazi's fourth attack on the Settlement between the Trustee and Zarzeka: Pascazi initially opposed the settlement, moved to reargue it, and now seeks to attack it by way of rearguing the denial of his

5

motion to compel. It seems that in the present motion to reargue, Pascazi is trying to force the Trustee to abandon the claim against Zarzeka so that Pascazi can take it up: "The claims against Zarzeka should be abandoned by the estate, and should revert back to the State Court Plaintiffs, for the State Court Plaintiffs to do with them what they wish, if anything." Docket No. 111, *Motion for Reargument*. In support of his motion to reargue, Pascazi asserts:

> 1. Since the Court found that the state-court claims against Zarzeka were of inconsequential value to the estate, the claims were required to be abandoned by the Trustee so that they can be taken up by the state-court plaintiffs, Pascazi *et al*;
>
> 2. In his settlement with Zarzeka, the Trustee only settled claims related to the adversary proceeding; Pascazi alleges that the state-court action involves entirely different matters. Pascazi points to paragraph 5 of the settlement for the proposition that the Trustee only settled the sole claim in the adversary proceeding;
>
> 3. The Court has absolved the six other defendants in the state-court action, because Pascazi cannot prove accomplice liability against them without proving the liability of the principal, Zarzeka.

In opposition, counsel to Zarzeka points out that the Trustee must have possession in order to abandon, and that the Trustee waived the claims in the settlement with Zarzeka. The Trustee has no possession of the claims, and therefore cannot abandon them. Counsel to Zarzeka further points out that the trustee released Zarzeka from ***all*** claims by way of the general release in paragraph 3 of the stipulation of settlement.

In a sur-reply to Zarzeka's opposition, Pascazi argues that Zarzeka does not have standing to oppose the motion to reargue, having surrendered his rights in the stipulation. The Court notes that sur-replies are not permitted in federal court, and

6

rejects Pascazi's sur-reply as procedurally improper. *See Kapiti v. Kelly*, 2008 U.S. Dist. LEXIS 20135 (S.D.N.Y. March 12, 2008) ("Allowing parties to submit surreplies is not a regular practice that courts follow, because such a procedure has the potential for placing a court in the position of refereeing an endless colley of briefs").

Pascazi further alleges in his disallowed sur-reply, "It must be noted, that any and all claims held by the estate <u>will</u> revert back to the Debtor, upon discharge or dismissal of the case, unless the Trustee pursues them first." *Reply Brief in Support*, ECF Docket No. 114, April 3, 2009.

On the record of the hearing on September 8, 2009, counsel to Mr. Zarzeka advised the Court that Zarzeka had made his payments pursuant to the settlement.

Corporations do not receive a discharge in chapter 7. 11 U.S.C. § 727(a)(1) provides that the court shall grant the debtor a discharge, unless the debtor is not an individual. "Under the Code, a corporation or partnership in a chapter 7 case is liquidated only and never receives a discharge." 6 Collier on Bankruptcy ¶ 727.01[3] at 727-12 (Alan Resnick & Henry K. Sommer eds., 15th ed. rev. 2006).

The trustee may only abandon property to the debtor, not to creditors. *See In re Renaissance Stone Works, LLC*, 373 B.R. 817 (Bankr. E.D. Mich. 2007) (where creditor who was member of debtor sought to pursue derivative claims of debtor, the court held that the Bankruptcy Code did not support abandonment of property of the estate to a non-debtor). Additionally, Bankruptcy Code § 554 provides that the trustee *may* abandon property of the estate, and that the Court *may* order abandonment; the Code uses the term "shall" to denominate absolute requirements and eliminate the discretion of the court or the trustee.

With regard to motions to reargue generally,

> The only proper ground on which a party may move to reargue an unambiguous order is that the court overlooked matters or controlling

7

> decisions which, had they been considered, might reasonably have altered the result reached by the court. The rule is calculated to insure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters. It also precludes repetitive arguments on issues that have already been considered by the court.

*Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.)*, 190 B.R. 185, 187 (Bankr. S.D.N.Y. 1995) (citations omitted).

The relief Pascazi seeks is not permitted by bankruptcy law. In his disallowed sur-reply, Pascazi admits that the state-court shareholder derivative action was for the benefit of the defunct Debtor, not Pascazi personally. *Reply Brief in Support*, ECF Docket No. 114, April 3, 2009. Even if the claims asserted in the state-court action survived the settlement between O'Leary and Zarzeka, which for the second time the Court finds they did not, the Trustee cannot abandon the claims of the estate to Pascazi individually as a state-court plaintiff. Further, the chapter 7 trustee and Zarzeka agreed to a general release of the claims of the trustee. The Debtor's claim against Zarzeka in the derivative lawsuit has been extinguished by the settlement.

The Court finds that Pascazi has failed to carry his burden on a motion to reargue with regard to his fear that the settlement with Zarzeka will absolve the other defendants, who allegedly are accomplices of Zarzeka. Pascazi has failed to submit any new legal authority that the court must consider the effect of settlement on third parties when deciding whether or not to approve a settlement between a trustee and another party. Further, the Court clearly was aware of the other defendants when it denied the motion to compel abandonment, as it noted in its decision dated March 6, 2009, that it had not been asked to take a position with regard to the extent that the claims against the other defendants may be pursued without proceeding against Zarzeka. Having repeatedly failed to persuade the

Court after the numerous attacks on the settlement that potential absolution of the other defendants requires litigation against Zarzeka, Pascazi is not permitted to continue gnawing on this issue by way of the present motion to reargue.

The Court holds that Pascazi has failed to raise fresh matters or newly discovered controlling authority to cause the Court to reconsider or reverse any part of the Order dated March 6, 2009. Pascazi's motion to reargue is denied.

### *The Department of Labor's proceeding against Debtor and Pascazi*

The Department commenced a post-petition proceeding by notice of hearing dated March 30, 2006, against the Debtor, Pascazi, Zarzeka, and Fiber Optek Service Co. (the 'Proceeding"). The Court notes again that the Debtor is a defunct corporation represented by a trustee. The Proceeding was commenced to determine whether the parties violated Article 8 of the Labor Law, §§ 220 *et seq.* by failing to pay prevailing wages to 13 workers on about a dozen projects. The Proceeding also was set to determine whether the failure to pay the prevailing wage was willful, whether a civil penalty should be assessed, whether Fiber Optek falsified payroll records, and whether Pascazi knowingly participated. *Opposition Brief*, ECF Docket No. 154, Sept. 1, 2009.

On August 1, 2009, Pascazi, not the Debtor, moved for an order holding the Department in contempt of the automatic stay. Pascazi requests as relief that the Department be allowed to purge its contempt by discontinuing the Proceeding, which the Department has recently resumed.

In opposition, the Department describes the disputed proceeding as one to direct payment of wages and a penalty for violations of the provision of the Labor Law that requires wages to be paid at the prevailing rate for work done on public projects. The Department asserts that Pascazi is without standing to seek a determination regarding the applicability of the automatic stay, as such arguments

9

are within the purview of the chapter 7 trustee alone, pursuant to *In re Pecan Groves of Arizona*, 951 F.2d 242 (9th Cir. 1991), which was followed recently in a memorandum decision by the Southern District of New York in *Taberna Capital Mgt. LLC v. Dunmore*, 2008 U.S. Dist. LEXIS 54776 (S.D.N.Y. July 15, 2008).

With regard to violations of the automatic stay in general, "a bankruptcy court may impose sanctions pursuant to § 362(h) … only for violating a stay as to debtors who are natural persons. For other debtors, contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay." *Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.)*, 920 F.2d 183, 186-187 (2d Cir. N.Y. 1990). "Corporate debtors seeking sanctions may have recourse in the assessment of sanctions in contempt proceedings. *In such proceedings, the court must find the presence of malicious intent or the absence of good faith in order to hold a person in contempt for conduct violating the automatic stay*." *In re Coney Island Land Co., LLC*, 2005 Bankr. LEXIS 2909 (Bankr. E.D.N.Y. Mar. 31, 2005) (emphasis added).

In *Pecan Groves*, the chapter 7 trustee and two creditors had judgment entered against them on a matter concerning an alleged violation of the stay; the trustee did not appeal the decision, but the creditors appealed the decision. The Ninth Circuit noted the rules that only people who are directly and adversely affected pecuniarily by an order of the bankruptcy court have standing to appeal that order, and that the trustee is charged with the administration of the estate for the debtor's and creditor's benefit. *In re Pecan Groves*, 951 F.2d at 245. The court held "a creditor has no independent standing to appeal an adverse decision regarding a violation of the automatic stay." *In re Pecan Groves*, 951 F.2d at 245.

In *Taberna Capital Mgt. LLC*, the debtor's case was pending in California, and the District Court for the Southern District of New York applied Ninth Circuit law, *Pecan Groves*, to find that the non-debtor defendants did not have standing to

10

challenge an act as a violation of the stay, quoting the following rule from *Pecan Groves*: "The majority of jurisdictions which have considered standing under the automatic stay provision, 11 U.S.C. § 362, have concluded that section 362 is intended solely to benefit the debtor estate…. If the trustee does not seek to enforce the protections of the automatic stay, no other party may challenge acts purportedly in violation of the automatic stay…." *Taberna Capital Mgmt., LLC*, 2008 U.S. Dist. LEXIS 54776, *2. In a footnote, the court in *Taberna Capital Mgmt. LLC* stated that even if it were not bound by *Pecan Groves*, it would find that authority persuasive.

In a sur-reply, Pascazi mischaracterizes *Pecan Groves* as concerning only standing to appeal. The court in *Pecan Groves* arrived at its determination that the creditors could not appeal by evaluating authority holding that the trustee is the proper party to challenge acts as done in violation of the automatic stay. In an attempt to further distinguish *Pecan Groves*, Pascazi cites *Barnett Bank, N.A. v. Trust Co. Bank (In re Ring)*, 178 B.R. 570 (Bankr. S.D. Ga. 1995), in which plaintiff, a secondary mortgagee, sued the defendant, the primary mortgagee, for a foreclosure done in violation of the stay. The court held that plaintiff, a corporate creditor, did not have standing to seek damages for a violation of the stay under Bankruptcy Code § 362(h), although it could pursue relief under contempt. The court went on to cite *In re Chateaugay Corp.*, 920 F.2d 183, 184-87 (2d Cir. 1990), for the proposition that civil contempt requires a finding of maliciousness or bad faith, and that "if a party has a good faith argument and belief that its actions were not in violation of the stay, civil contempt sanctions may not be appropriate." *Barnett Bank, N.A.*, 178 B.R. at 578.

In the case at bar, the Court again rejects Pascazi's sur-reply as procedurally improper.

11

The Court agrees with the Department's argument that Pascazi lacks standing to bring the present motion, and holds that Pascazi does not have standing to move for contempt.

Although the Court's analysis is complete on finding that Pascazi does not have standing to seek relief in the present motion, the Court will briefly address the merits of the stay violation. 11 U.S.C. § 362(b)(4) provides that the stay does not bar the commencement or continuation of a proceeding by a government entity to enforce its police or regulatory power.

> Labor Law § 220, in content, structure and purpose confirms that a proceeding … brought by the Commissioner of Labor to enforce the statutory and constitutional mandate, *has as its overriding goal the vindication of a public interest* rather than just to provide a forum in a particular case for the adjudication of a claimed personal statutory right … Section 220 has been characterized as "an attempt by the State to hold its territorial subdivisions to a standard of social justice in their dealings with laborers, workmen, and mechanics."

*Cayuga-Onondaga Counties Bd. of Coop. Educ. Servs. v. Sweeney*, 89 N.Y.2d 395, 402 (N.Y. 1996) (emphasis added).

Pascazi characterizes the Department as a "collection agent" for the workmen, relying heavily on Department's statement in an earlier filing that it was a collection agent for the workmen.[1] He relies on *In re Chateaugay Corp.*, 115 B.R. 28 (Bankr. S.D.N.Y. 1988) in support of his argument that the DEPARTMENT's acts concern a private matter, which is not excepted from the stay by the "police power" exception of 11 U.S.C. § 362(b)(4).

---

[1] As discussed herein, there is more at stake in this matter than collecting money on behalf of some creditors; Pascazi personally faces fines under New York law if he is found to have paid the workers less than the prevailing wage.

In April 2009, the Court disallowed claims of two workmen as duplicative of the DEPARTMENT's claim.

12

In *Chateagay*, the court noted the exception to the stay regarding the police power, and described the two tests used to determine the applicability of this provision:

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtors property, and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted from the stay.

*In re Chateaugay Corp.*, 115 B.R. 28, 31 (Bankr. S.D.N.Y. 1988). The court held that the government did not meet its burden to show that its actions were excepted from the stay under these two tests.

The Court finds that, even if Pascazi has standing to move for contempt, the Department had a good faith basis to believe that its acts were not in violation of the stay, because the Department perceived itself to be within the exception for the police power. The Department references an earlier exchange of law with Pascazi, in which it cites several cases that support the Department's position that the Proceeding is within the police power exception to the stay, including *In re Ngan Gung Restaurant, Inc.*, 183 B.R. 689, 691-692 (Bankr. S.D.N.Y. 1995) ("Litigation by governmental units to enforce federal and state labor laws uniformly has been excepted from the stay under § 362(b)(4). The exception has been applied to actions seeking to enjoin, or assess penalties on account of, improper labor practices and to cause employers to make restitution payments to employees"). The Department seeks to enforce a New York wage law, and *In re Ngan Gung Restaurant, Inc.* concerned a New York wage law, and the related proceeding in *In re Ngan Gung Restaurant, Inc.* was found to be excepted from the stay. Further, as

13

noted above, the Court of Appeals has held that proceedings under Labor Law § 220 implicate the public interest. *See Cayuga-Onondaga Counties Bd. of Coop. Educ. Servs., supra.*

Finally, the weight of authority submitted by the Department satisfies this Court that the acts of the Department are within the police power exception. The Department submits a memorandum decision by Judge Littlefield of the Bankruptcy Court for the Northern District of New York, *In re Pollack*, 402 B.R. 534 (Bankr. N.D.N.Y. 2009). The court considered whether the police power exception applied to enforce a provision of the Labor Law, preformed a comprehensive analysis of three tests of whether, and held that it applied under all: the pecuniary purpose test (attempts to fix damages for violations of police or regulatory laws are not stayed by the automatic stay), the pecuniary advantage test (the Department was simply seeking to liquidate its claim), and the public policy test. The court noted in its analysis that actions to collect back wages and related fines are meant to curb certain behavior, and concluded that the contested acts of the Department to enforce the Labor Law were excepted from the stay by the police power exception. *See also In re Ngan Gung Restaurant, Inc.*, *supra*; *SEC v. Brennan*, 230 F.3d 65 (2d Cir. 2000) (government acts to fix damages for violations of police and regulatory laws are within the police power exception, up to entry of money judgment; acts to collect must be undertaken on separate application to the bankruptcy court); *NLRB v. 15th Ave. Iron Works, Inc.*, 964 F.2d 1336, 1337 (2d Cir. 1992) ("we agree with the first, fifth, sixth, seventh and ninth circuits, each of which has concluded (1) that [National Labor Relations Board] is a 'governmental unit', and (2) that NLRB unfair labor practice proceedings and enforcement proceedings are proceedings to enforce the NLRB's police or regulatory powers;" stay did not apply to proceedings and court was unconcerned with fact that debtor had gone out of business after filing the petition).

Therefore, it cannot be argued that the Department may be punished by an order of contempt, because the Department had a sufficient good faith basis to believe that its acts were excepted from the stay. The Court further holds that the Proceeding was excepted from the stay pursuant to Bankruptcy Code § 362(b)(4). The Court denies Pascazi's motion for an order holding the Department in contempt.

## ***CONCLUSION***

The Court denies Pascazi's motion to reargue that part of the March 6, 2009, Order that denied his motion to compel the trustee to abandon the claims of the estate in the state-court derivative suit, because Pascazi failed to direct the Court to any facts or controlling authority that the Court did not consider when it made the determinations of the March 6, 2009, Order.

The Court denies Pascazi's motion to hold the Department in contempt, because Pascazi does not have standing to move for contempt on account of a violation of the automatic stay, and even if he does have such standing, the Department had a good faith basis to believe its acts did not violate the stay because authority suggests that its acts are protected by the police power exception to the automatic stay, and its acts are protected by the police power exception to the automatic stay.

Dated:   Poughkeepsie, New York
         September 23, 2009

/s/ Cecelia Morris
Hon. Cecelia G. Morris
U.S. Bankruptcy Court